## TIM ERWIN *v.* THE STATE.

1. INSANITY — DELIRIUM TREMENS.— That delirium tremens is a species of insanity, and such as may render a party afflicted therewith incapable of the commission of crime, is no longer an open question.
2. CHARGE OF THE COURT.— The accused having set up as his defense that at the time of the alleged offense he was laboring under an attack of delirium tremens, and there being evidence before the jury tending to establish this defense, it was the duty of the court to give in charge pointedly and directly, the principles of law applicable thereto.
3. SAME.— See the opinion for a charge of the court held error, as being negative, and so general as to include every species of insanity.
4. SAME.— However slightly the evidence may tend to establish the defense interposed, it is the duty of the court to charge the law applicable to such defense.
5. SAME.— A charge of the court is error that makes the test of insanity depend upon whether the defendant knew right from wrong generally, instead of with respect to the act of which he is charged in the indictment.
6. SAME.—DELIRIUM TREMENS is usually the result of habitual use of intoxicants, but may also ensue from casual drunkenness.

APPEAL from the District Court of Tarrant. Tried below before the Hon. A. J. HOOD.

The indictment charged the appellant with an assault with intent to kill and murder W. T. Whitlow, in Tarrant county, Texas, on the 1st day of November, 1880. His trial resulted in his conviction of the offense charged against him, and two years in the penitentiary was the punishment awarded him.

The substance of the evidence for the prosecution was, that, on the morning of November 1st, 1880, at about 7 1-2 o'clock, Whitlow, the injured man, was standing in the door of a saloon in which he was employed, in Fort Worth, when he was approached by the appellant, who asked him for a drink of whiskey. Whitlow refused him the whiskey, telling him that he had drank enough. Continuing the conversation, Whitlow told him that if he did not quit drinking, he, Whitlow, would report him, and his dismissal from the night-watch force, on which he was employed, would follow. About this time Capt. Paddock came up and entered into a conversation with Whitlow. While Whitlow and Paddock were talking, the appellant asked Whitlow "Are you going to give me that drink?" to which question Whitlow answered "No!" Appellant drew his pistol, and said: "G–d d—n you, you have been back-cupping me all the time, and I'll give it to you now," and immediately fired, the ball striking Whitlow in the arm; from which wound he was confined to his bed for two weeks. Paddock started to appellant, but the latter presented his pistol and held him at bay. The city marshal approaching about this time, the appellant left, paying no attention to the marshal's order to halt. Two witnesses for the State testified that, while the appellant appeared to be drinking somewhat, he did not appear to be deprived of his reason, and in their opinion he knew what he was doing.

A number of witnesses for the defense testified that at the time of, and for some time previous to the shooting, the appellant had been drinking to great excess. They

declared their belief in his insanity resulting therefrom, and that he did not know right from wrong at the time, nor what he was doing. Upon this testimony the appellant rested his defense.

*Ball & McCart*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J.   Erwin, the appellant, was convicted of the offense of assault with intent to murder. His defense was that he was insane at the time of the assault; that he was suffering under a species of insanity known as delirium tremens. The evidence raises the issue as to whether the defendant was at the time of the assault in a drunken frenzy, or laboring under the disease known as delirium tremens. If, therefore, delirium tremens is such imbecility of mind as will excuse the defendant, or, to speak more in accord with legal principle, defeat guilt, then it was the duty of the court below to charge the jury thereon in a clear and pointed manner.

That it is a species of insanity rendering the party incapable of the commission of crime, there is no longer any doubt. Messrs. Wharton & Stille, in their admirable work on Medical Jurisprudence, are very clear and emphatic on this point. They say: "If a man who, laboring under delirium tremens, kills another is made responsible, there is scarcely any species of insanity which, on like principles, would not be subjected to the severest penalties of criminal law." Wharton & Stille's Medical Jurisprudence, vol. 1, p. 202.

A party laboring under this species of insanity, not being responsible for his acts committed while thus diseased, and the evidence in this case tending to form this issue, it was the duty of the learned judge, in his charge, to have clearly and pertinently set forth the principles of law applicable to this defense. This was not done

in that clear and distinct manner required by the now well-settled principles of law. *Burrell* v. *State*, 18 Texas, 713; *Marshall* v. *State*, 40 Texas, 200; *Lindsay* v. *State*, 1 Texas Ct. App. 327; *Lopez* v. *State*, 42 Texas, 298; *Sutton* v. *State*, 41 Texas, 513; *Miles* v. *State*, 1 Texas Ct. App. 510; *Pugh* v. *State*, 2 Texas Ct. App. 539; *Richardson* v. *State*, 7 Texas Ct. App. 486; *Francis* v. *State*, 7 Texas Ct. App. 501; *O'Connell* v. *State*, 18 Texas, 343; *Vincent* v. *State*, 9 Texas Ct. App. 203; *Whaley* v. *State*, 9 Texas Ct. App. 305; *Henry* v. *State*, 9 Texas Ct. App. 358.

The charge of the court upon the only issue in this case, that upon which the defendant relied for an acquittal, to wit, insanity, is as follows: "You are further instructed that where a defendant is accused of crime, placed on trial, and the plea of insanity is interposed, the inquiry the law requires in such cases is not as to the amount of intellectual capacity of the accused, or in other words, the law does not look to or inquire whether an accused party is possessed of a little or a great mind. It is the quality and not the quantity of the mind that the law looks to. If a man is in possession of a sound mind, has merely sufficient mental capacity to know right from wrong, to know and comprehend the nature and consequences of his own acts, the law holds such party accountable. On the other hand, a man may be in the possession ordinarily of that which would be termed a great mind, still if such person, during a period of actual insanity, violate the law, such person would in law not be a subject for punishment, and in such case it is in law immaterial what the cause of said insanity may have been. But in law insanity and mere drunkenness are two things distinct one from the other. While insanity exonerates from all punishment, mere drunkenness neither mitigates or justifies. If a man of his own volition voluntarily becomes drunk, and during a fit or spell of even very great intoxication, does an act, he cannot in

such case plead drunkenness as an excuse.   The law will not allow a sane man to shield himself from the consequences of his own acts on the ground that such sane man of his own accord and of his own will chose to become even beastly drunk.   No mere temporary condition of the mind, brought about by a fit or mere spell of drunkenness, however great such drunkenness may be, is in law an exoneration or excuse for crime."

This charge, so far as the defense of the defendant is concerned, is negative in its character.   There is no direct, affirmative application of the law to his theory of defense.   It is true that the jury are told that if they believe that the defendant is *actually insane*, he would not be amenable.   This is very general, including every species of insanity.   The evidence tending, whether strongly or otherwise, to establish delirium tremens, the charge should have explained that species, and applied the legal principles thereto.   This should have been done clearly, distinctly and affirmatively.   Again, the charge makes the test of insanity depend upon whether the defendant knew right from wrong generally.   The test is now settled to be whether the defendant knew the act charged to be wrong; if so, he is punishable.

There is another objection to the charge.   It proceeds upon the idea that no temporary condition of the mind produced by drunkenness can avail.   This is a correct assumption if delirium tremens can never result directly and immediately from drunkenness.   This, however, is not the case.   Though usually occurring in hab' ·al drinkers after a few days' total abstinence from sp. ⅃uous liquors, it may be the immediate effect.   Wharton & Stille's Medical Jurisprudence, vol. 1, § 202; Ray's Med. Jur. 238.

For the errors above pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*